Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,

v.

Clifford L. AKSLAND, Individually and dba C. L. Aksland Trucking, Defendant-Appellant.

Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

Clifford L. AKSLAND, Individually and dba C. L. Aksland Trucking, Defendant-Appellee.

Nos. 78-1716, 78-2299.

United States Court of Appeals, Ninth Circuit.

Argued June 11, 1980.

Submitted Aug. 21, 1980.

Decided Oct. 28, 1980.

Gary P. Scholick, San Francisco, Cal., argued for Aksland; Thomas J. Allen, Atty., Washington, D.C., Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., on brief.

Kerry L. Adams, Sol. of Labor, N.L.R.B., Washington, D.C., argued for Marshall; Thomas G. Williams, Atty., Dept. of Labor, Washington, D.C., on brief.

Before CHAMBERS, SNEED and FARRIS, Circuit Judges.

SNEED, Circuit Judge:

The principal issue in this case is whether the trucking business of Aksland, appellee and cross–appellant, is exempt from the overtime compensation provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 et.seq.

The Secretary of Labor initiated this suit in 1973 to enjoin Aksland from violating 29 U.S.C. § 207 by failing to pay appropriate overtime compensation and to restrain the withholding of such compensation already due. Aksland defended on the ground that his employees were exempt from those provisions by reason of 29 U.S.C. § 213(b)(1), the so–called Motor Carriers Act exemption. The period of time covered by the Secretary's suit is January 11, 1971 to March 11, 1975.

The district court entered judgment for Aksland and in its conclusions of law held that his trucking business was within the Motor Carriers Act exemption. The Secretary appealed and we affirm. Because of this we need not consider Aksland's cross–appeal which was from an order denying his motion to reopen the record. Under these circumstances, a reopening of the record would serve no useful purpose.

Subsequent to oral argument, the Secretary of Transportation, in response to a request by the court, filed an amicus curiae brief in which he supported the result reached by the trial court. The Secretary of Labor, with the court's permission, filed a supplemental brief in response to the amicus curiae brief of the Secretary of Transportation.

I.

FACTS

A summary of the facts as found by the district court is as follows. Aksland, who entered the trucking business in 1951, began his transportation in interstate commerce in 1960. Between 1960 and the fall of 1963, he hauled bakery goods from California to Reno and Carson City, Nevada. In this period, Aksland employed approximately twelve truck drivers and between fifteen and twenty percent of his revenue was derived from the interstate transportation of bakery goods. This interstate business was lost in November 1963 when the bakery shippers withdrew their business because of a collective bargaining agreement with a union. Aksland's bankruptcy resulted.

In 1965 Aksland revived his trucking business and without success solicited interstate business from the bakery industry . Nonetheless his vehicles were maintained in accordance with I.C.C. regulations and his I.C.C. rights were kept current. His solicitations bore some fruit in late 1969, however; two bakeries agreed to ship their products in his trucks between California and Nevada. For five weeks during Janu-

ary and February 1970, Aksland transported bakery products between California and Nevada. Once more labor pressure was exerted and, after five weeks, the bakeries withdrew their business. Thereafter, Aksland transported no goods in interstate commerce until 1974, at which time he transported liquid food supplement and cattle feed from Oregon and Idaho pursuant to contract.

Aksland from 1965 to the time of trial solicited interstate business by personal contacts and advertisements. He filed tariffs for interstate bakery hauling with the I.C.C. His drivers conformed to the Motor Carrier Safety Regulations, maintained Department of Transportation forms, and shared interstate hauls on a rotating basis. In short, as the district court found, "From 1965 to the time of trial, Aksland maintained his I.C.C. authority and held himself available for interstate business."

## II.

## THE EXEMPTION

The exemption from overtime compensation is as follows:

The provision of section 207 of this title shall not apply with respect to— (1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of title 49; 29 U.S.C. § 213(b)(1).

The "power" of the Secretary of Transportation set forth in subsection 304(a) of Title 49 to which the exemption refers is as follows:

It shall be the duty of the [Interstate Commerce] Commission—

(1) To regulate common carriers by motor vehicles as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to continuous and adequate service, transportation of baggage and express, uniform systems of accounting, records and reports, preservation of records, qualifications and maximum hours of service

of employees, and safety of operation and equipment.

Although section 304(a) vests power in the Interstate Commerce Commission, 49 U.S.C. § 1655(e) transfers to the Secretary of Transportation all powers and duties of the Commission relating to qualifications and maximum hours of employees and safety of operations and equipment under section 304.

The Secretary of Transportation's power, however, is limited to those who are "common carriers by motor vehicle." Such a carrier is defined as follows:

any person which *holds itself out to the general public to engage in the transportation by motor vehicle in interstate or foreign commerce* of passengers or property or any class or classes thereof for compensation, whether over regular or irregular routes ... (Emphasis added) 49 U.S.C. § 303(a)(14).

By contrast, a "contract carrier by motor vehicle" is defined as a "person which engages in transportation" pursuant to "continuing contracts" with one or more persons. 49 U.S.C. § 303(a)(15).

On appeal, the Secretary of Labor initially argued that a person who held himself out but did not receive or perform business in interstate transportation was not entitled to the exemption. The Secretary's approach was to focus upon the type of commerce actually conducted. Only interstate commerce was subject to regulation by the Secretary of Transportation and entitled to exemption from FLSA. Intrastate commerce, on the other hand, was governed by the states with respect to fixing the maximum hours for safety purposes "leaving to FLSA to carry out its social and economic purposes as the sole exercise of the Federal power." Appellant's Brief, p. 8.

This approach required that the Secretary of Labor attack frontally both *Brennan v. Schwerman Trucking Co.*, 540 F.2d 1200 (4th Cir. 1976), and *Starrett v. Bruce*, 391 F.2d 320 (10th Cir. 1968), both of which held, as *Schwerman Trucking Co.* put it, that "... it is not what a corporation does but what it holds itself out to do that

determines its status as a common carrier." 540 F.2d at 1204. These authorities were wrongfully decided, the Secretary of Labor originally argued, because 49 U.S.C. § 302(a) limited Chapter 8 of Title 49 to *the transportation* in interstate commerce and because another subsection, 302(b), provided that nothing in Chapter 8 was "to interfere with the exclusive exercise by each State of the power of regulation of intrastate commerce by motor carriers on the highways thereof."

In his reply brief to the Secretary of Transportation's amicus curiae brief, the Secretary of Labor abandoned his attack on *Schwerman Trucking Co.* and *Starrett.* In his words, he acceded "to the Department of Transportation's reasoning that a common carrier who might acquire sporadic interstate business must insure that 'his drivers comply with DOT [safety] regulations at all times,' because otherwise he cannot guarantee that any interstate trips which he might undertake will be performed by a qualified driver who has sufficient hours left to work in a particular week, in accordance with DOT requirements." Reply Brief pp. 2–3.

This concession did not lead the Secretary of Labor to abandon this appeal, however. He now contends that "a common carrier is exempt from overtime obligations when, pursuant to a valid I.C.C. certificate, it solicits interstate business which it might realistically acquire, even if no interstate business is actually obtained." Reply Brief p. 2. Lacking any reasonable expectation of regaining the bakery business, Aksland, the Secretary of Labor now argues, had no realistic prospects of obtaining interstate business. Thus, the exemption is inapplicable.

While admitting that his jurisdiction would not exist had Aksland held himself out in bad faith, citing *Baird v. Wagoner Transportation Co.*, 425 F.2d 407 (6th Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59 (1970), the Secretary of Transportation insists that such was not the case under the present facts. We agree. The facts as found by the trial court establish that Aksland held itself out to the general public as being available for interstate business, actively solicited such business, and was able to handle such business as it got, as well as such as it might have received. No inference of a bad faith holding out can be drawn. That is enough to make the exemption applicable.

We reject the Secretary of Labor's argument that the exemption's availability turns on the reasonableness of the carrier's expectation of getting interstate business. Not only would such a view enhance the influence of hindsight, it also would not avoid the flaw in the Secretary's initial position. That is, a carrier seeking interstate business in good faith would be required to comply with the regulations of the Department of Transportation even though it turns out that his expectation of getting such business was unrealistic. It is true, of course, that faint prospects may be evidence of bad faith. Nonetheless, however characterized, Aksland's prospects in this case require neither a finding of bad faith nor a remand for further hearings.

Finally, we reject the Secretary of Labor's argument for the best reason of all. His position is not supported by the applicable statute. The jurisdiction of the Department of Transportation turns on whether a person "holds itself out to the general public to engage in the transportation by motor vehicle in interstate and foreign commerce." 49 U.S.C. § 303(a)(14). It does not turn on whether there exists, in addition to the required "holding out," a reasonable prospect of getting interstate or foreign business. *See Morris v. McComb*, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947).

Affirmed.