Robert B. REICH,* Secretary of Labor; U.S. Department of Labor, Plaintiffs–Appellants,

v.

AMERICAN DRIVER SERVICE, INC., a corporation; James I. Roberts, individually, Defendants–Appellees.

No. 92–35369.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1993.

Decided Aug. 30, 1994.

* Robert B. Reich is substituted for his predecessor, Lynn Martin, as the Secretary of Labor. Fed. R.App.P. 43(c)(1).

Anne P. Fugett, U.S. Dept. of Labor, Washington, DC, for plaintiffs-appellants.

Thomas F. Dowd, Omaha, NE, for defendants-appellees.

Before: TANG, FARRIS and RYMER, Circuit Judges.

Opinion by Judge TANG; Dissent by Judge FARRIS.

TANG, Senior Circuit Judge:

The Secretary of Labor appeals the district court's decision to include within the Secretary of Transportation's jurisdiction, the drivers, fuelers and utility workers of American Driver Services, Inc. ("ADS"), a motor contract carrier. The district court's decision exempts ADS from the maximum hours provisions of the Fair Labor Standards Act ("FLSA"). The Secretary of Labor ar-

gues that the Secretary of Transportation's own interpretation of the extent of his jurisdiction requires that a motor contract carrier actually engage in interstate commerce before it is exempt from the maximum hours provisions of the FLSA. The Secretary of Labor also argues that the district court erred in concluding that the liability of ADS's owner was a moot issue. We reverse and remand.

## BACKGROUND

ADS provided motor carrier services to various businesses throughout the United States. On June 1, 1985, ADS entered into a contract with the Western Sugar Company ("Western") to transport sugar beets by truck from various receiving stations in Montana and Wyoming, to Western's processing plant in Billings, Montana. The contract and subsequent addendum covered the sugar beet harvesting seasons from 1985–86 to 1990–91. Those harvesting seasons took place from September to January or February of the following year.

Although ADS engaged in some interstate commerce during each harvesting season in question, it engaged in wholly intrastate commerce for the first months of each season.[1] ADS indiscriminately assigned any interstate travel to its drivers using a "first in, first out" method, and therefore, all of its drivers reasonably could have been expected to engage in interstate commerce. Additionally, the parties have stipulated that the duties of ADS's fuelers and utility workers affected the safety of the vehicles engaged in interstate commerce, and that for purposes of an exemption from the maximum hours provisions of the FLSA, they should be treated in the same manner as ADS's drivers.

The Secretary of Labor brought this action under § 16(c) and § 17 of the FLSA, seeking to enjoin ADS and its president and principal shareholder, James Roberts, from violating overtime and record keeping requirements, and to recover unpaid overtime compensation for ADS's drivers, fuelers and utility work-

[1] The Secretary of Labor's complaint alleges that ADS has been in violation of the maximum hours provisions of the FLSA since September 12, 1987. Although not absolutely clear from the record, it appears that ADS did not engage in any interstate commerce until at least December of any harvesting season in question.

ers. Both ADS and Roberts filed motions for summary judgment, ADS arguing that its drivers, fuelers and utility workers were exempt from the maximum hours provisions of the FLSA, and Roberts arguing that he could not be found personally liable for violations of the maximum hours provisions of the FLSA because he was not an "employer" under 29 U.S.C. § 203(d). The Secretary of Labor filed a cross-motion for partial summary judgment on the issue of Roberts' status as an "employer."

The case was referred to a magistrate judge who determined that ADS's drivers were exempt from the maximum hours provisions of the FLSA, and that as a consequence, the issue of Roberts' liability was moot. The Secretary of Labor objected to the magistrate judge's findings and recommendations. The district court undertook a de novo review as required under 28 U.S.C. § 636(b)(1)(C), and adopted the magistrate judge's findings and recommendations. The Secretary of Labor timely appeals.

## STANDARD OF REVIEW

■ A grant of summary judgment is reviewed de novo. *Jones v. Union Pacific R.R. Co.,* 968 F.2d 937, 940 (9th Cir.1992). Whether ADS's drivers, fuelers and utility workers were exempt from the maximum hours provisions of the FLSA is a question of law that is reviewed de novo. *Jones v. Giles,* 741 F.2d 245, 248 (9th Cir.1984).

## DISCUSSION

### I.

■ Any motor carrier that engages in interstate commerce is subject to the Secretary of Transportation's jurisdiction, *see* 49 U.S.C. § 10521, and is thus exempt from the

maximum hours provisions of the FLSA, *see* 29 U.S.C. § 213(b)(1). Upon engaging in such interstate commerce, the Secretary of Transportation may prescribe the requirements for the "qualifications and maximum hours of service of employees of, and safety of operation and equipment of, [the] motor carrier...." 49 U.S.C. § 3102(b)(1).[2] Any motor carrier that engages in wholly intrastate commerce, however, is subject to the Secretary of Labor's jurisdiction, and consequently, to the maximum hours provisions of the FLSA.[3]

■ Although many motor carriers engage in both interstate and intrastate commerce, a motor carrier cannot be subject to the jurisdiction of both the Secretary of Labor and the Secretary of Transportation. *Giles,* 741 F.2d at 249. When determining to which Secretary's jurisdiction such a motor carrier's employees are subject, courts have consistently looked to the Supreme Court's decision in *Morris v. McComb,* 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947). *See e.g. Brennan v. Schwerman Trucking Co. of Virginia, Inc.,* 540 F.2d 1200 (4th Cir.1976); *Crooker v. Sexton Motors, Inc.,* 469 F.2d 206 (1st Cir.1972); *Starrett v. Bruce,* 391 F.2d 320 (10th Cir.), *cert. denied,* 393 U.S. 971, 89 S.Ct. 404, 21 L.Ed.2d 384 (1968). Under *Morris,* even a minor involvement in interstate commerce as a regular part of an employee's duties can subject that employee to the Secretary of Transportation's jurisdiction. *Morris,* 332 U.S. at 432–35, 68 S.Ct. at 136–38. Nevertheless, an employee's minor involvement in interstate commerce does not necessarily subject that employee to the Secretary of Transportation's jurisdiction for an unlimited period of time, *see Baird v. Wagoner Transp. Co.,* 425 F.2d 407, 412–13 (6th Cir.), *cert. denied,* 400 U.S. 829, 91 S.Ct. 58,

---

**2.** A "motor carrier" is defined as a "motor common carrier" or a "motor contract carrier." 49 U.S.C. § 10102(13). A "motor common carrier" is defined as a motor carrier that "hold[s] itself out to the general public to provide motor vehicle transportation for compensation over regular or irregular routes, or both." 49 U.S.C. § 10102(14). A "motor contract carrier" is defined as a motor carrier that "provid[es] motor vehicle transportation of property for compensation under continuing agreements with one or more persons...." 49 U.S.C. § 10102(15)(B).

It is undisputed that ADS was a motor contract carrier.

**3.** If the wholly intrastate commerce is merely part of a "continuing transportation" in interstate or foreign commerce, though, the motor carrier is subject to the Secretary of Transportation's jurisdiction. *See Burlington Northern, Inc. v. Weyerhaeuser Co.,* 719 F.2d 304, 309–10 (9th Cir.1983).

27 L.Ed.2d 59 (1970), and if the employee's minor involvement can be characterized as de minimis, that employee may not be subject to the Secretary of Transportation's jurisdiction at all, *see Coleman v. Jiffy June Farms, Inc.,* 324 F.Supp. 664, 669–70 (S.D.Ala.1970), *aff'd by,* 458 F.2d 1139 (5th Cir.1971), *cert. denied,* 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972).

Recognizing the need for clarification of the extent of his jurisdiction over motor carriers, the Secretary of Transportation, through the Federal Highway Administration ("FHWA"), promulgated a notice of interpretation. That interpretation provides, in relevant part, that:

The FHWA view is that in order to establish jurisdiction under 49 U.S.C. 304 the carrier must be shown to have engaged in interstate commerce within a reasonable period of time prior to the time at which jurisdiction is in question. The carrier's involvement in interstate commerce must be established by some concrete evidence such as an actual trip in interstate commerce or proof, in the case of a "for hire" carrier, that interstate business had been solicited. If jurisdiction is claimed over a driver who has not driven in interstate commerce, evidence must be presented that the carrier has engaged in interstate commerce and that the driver could reasonably have been expected to make one of the carrier's interstate runs. Satisfactory evidence would be statements from drivers and carriers, and any employment agreements.

Evidence of driving in interstate commerce or being subject to being used in interstate commerce should be accepted as proof that the driver is subject to 49 U.S.C. 304 for a 4–month period from the date of the proof. The FHWA believes that the 4–month period is reasonable because it avoids both the too strict week-by-week approach and the situation where a driver could be used or be subject to being used once and remain subject to jurisdiction under 49 U.S.C. 304 for an unlimited time.

46 Fed.Reg. 37,902, 37,903 (1981).

The district court determined that under this interpretation, a motor carrier's reasonable expectation of engaging in interstate commerce is sufficient to trigger the interpretation's four month exemption. It further determined that once the exemption is triggered, interstate commerce must in fact occur within a four month period. Because the district court found that ADS had a reasonable expectation of engaging in interstate commerce at the beginning of each sugar beet harvesting season in question and that it actually engaged in interstate commerce within four months of the beginning of each of those seasons, the district court concluded that ADS was under the Secretary of Transportation's jurisdiction and thereby exempt from the maximum hours provisions of the FLSA. We agree with the Secretary of Labor that this construction is erroneous.

■ "An employer who claims an exemption from the FLSA has the burden of showing that the exemption applies...." *Donovan v. Nekton, Inc.,* 703 F.2d 1148, 1151 (9th Cir.1983). Any exemption must "be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress." *Id.* (quoting *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945)); *accord Giles,* 741 F.2d at 250. "To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretive process and to frustrate the announced will of the people." *Donovan,* 703 F.2d at 1151 (quoting *Walling,* 324 U.S. at 493, 65 S.Ct. at 808).[4]

■ In this case, at the beginning of each sugar beet harvesting season, ADS engaged in wholly intrastate commerce for several months before engaging in any interstate

4. While the Secretary of Transportation's interpretation of the extent of his jurisdiction as to motor carriers is entitled to due deference, *see Marshall v. Union Pac. Motor Freight Co.,* 650 F.2d 1085, 1090 (9th Cir.1981); *Dole v. Circle "A" Constr. Inc.,* 738 F.Supp. 1313, 1322–23 (D.Idaho 1990), that is not what is at issue in this case. The Secretary of Labor does not disagree with the FHWA's interpretation. Rather, the Secretary of Labor appeals the district court's construction of the interpretation.

commerce. The interpretation states that "to establish [the Secretary of Transportation's] jurisdiction ... the carrier must be shown to have *engaged* in interstate commerce within a reasonable period of time prior to the time at which jurisdiction is in question. The carrier's involvement in interstate commerce *must be established by some concrete evidence such as an actual trip in interstate commerce* or proof, in the case of a 'for hire' carrier, that interstate business had been solicited." 46 Fed.Reg. at 37,903 (emphasis added). If ADS engaged in wholly intrastate commerce at the beginning of each harvesting season, it did not engage in any interstate commerce during this time.[5]

Additionally, construing the interpretation narrowly, we do not think that ADS's arguably reasonable expectation of engaging in interstate commerce was sufficient to trigger the exemption. The interpretation's only reference to "reasonable expectations" concerns claims of jurisdiction over a motor carrier's drivers who have not driven in interstate commerce when there is evidence that other drivers employed by the motor carrier *have* driven in interstate commerce. In such a case, those drivers would be subject to the Secretary of Transportation's jurisdiction if they could "reasonably have been expected to make one of the carrier's interstate runs." The interpretation does not indicate that a driver's or motor carrier's reasonable expectations are otherwise relevant.

We conclude therefore that ADS has not met its burden of showing that an exemption to the FLSA was in effect at the beginning of any sugar beet harvesting season in question; ADS was not "plainly and unmistakably" within the terms of such an exemption until one of its drivers actually engaged in interstate commerce. Thus, from the beginning of each harvesting season and continuing until one of its drivers actually engaged in interstate commerce, ADS was subject to the jurisdiction of the Secretary of Labor, and consequently, to the maximum hours provisions of the FLSA. As such, we reverse the district court's grant of summary judgment and remand so that the district court can determine the amount of overtime compensation owed to ADS's drivers, fuelers and utility workers.

## II.

The district court concluded that the issue of Roberts' personal liability for violations of the FLSA was moot because ADS was exempt from the maximum hours provisions of the FLSA. Because we find that ADS was not exempt from those provisions, the issue is not moot, and should be addressed by the district court on remand.

**REVERSED AND REMANDED.**

FARRIS, Circuit Judge, dissenting:

As I understand it, the central question is whether American Driver Service, Inc., a seasonal carrier, should be judged on the same basis as year-round carriers. Because I am of the opinion that to do so would be "unreasonable," I respectfully dissent.

American Driver argues that it is exempt from the maximum hours requirements of the Fair Labor Standards Act, 29 U.S.C. § 207, because it is a motor contract carrier subject to the jurisdiction of the Secretary of Transportation. The district court determined that American Driver is exempt from FLSA's maximum hours provisions. There is no material question as to the fact that American Driver is a motor contract carrier engaged in interstate commerce whose drivers all have a reasonable expectation that they will engage in interstate commerce. There is evidence that American Driver actually engaged in interstate commerce a "reasonable time prior to the time at which [the Secretary of Transportation's] jurisdiction [came] into question." The opinion of the district court should be affirmed.

---

**5.** ADS argues briefly that any exemption in effect at the end of a sugar beet harvesting season would still be in effect at the beginning of the next season. Its argument is premised on its contention that the interpretation's four month exemption applies only to operational months, and ADS's sugar beet hauling business was not in operation from the end of one season to the beginning of the next. We find this argument unpersuasive. Nowhere does the interpretation state that the four month exemption is applied differently to operational and nonoperational months, and ADS does not offer any other support for such an application.

Congress has stated that "[t]he provisions of [the Fair Labor Standards Act, 29 U.S.C. § 207] shall not apply with respect to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49...." 29 U.S.C. § 213(b)(1).[1] The Secretary of Transportation has the authority to prescribe the qualifications and the maximum hours of service or employees of "motor carriers." 49 U.S.C. § 3102(b). Under 49 U.S.C. § 10102(13) a "motor carrier" can be either a "motor contract carrier" or a "motor common carrier." A "motor contract carrier" is defined as a "person providing motor vehicle transportation of property for compensation under continuing agreements with one or more persons." 49 U.S.C. § 10102(15)(B).

In order to be considered a motor contract carrier, and therefore exempt from the maximum hours requirements of FLSA, a corporation need not have all of its drivers actually undertake trips across state lines, but rather, all of its drivers must have a reasonable expectation that they will engage in interstate commerce. *Morris v. McComb*, 332 U.S. 422, 434, 68 S.Ct. 131, 136–37, 92 L.Ed. 44 (1947). All of its drivers can be said to have a reasonable expectation of engaging in interstate commerce if the carrier's work is "shared indiscriminately," that is, if it is apportioned in such a way as to ensure that all drivers are likely to engage in interstate commerce. *Id.* at 433, 68 S.Ct. at 136; *Marshall v. Aksland*, 631 F.2d 600, 602 (9th Cir.1980); *Brennan v. Schwerman Trucking Co.*, 540 F.2d 1200, 1205 (4th Cir.1976).

It is undisputed that American Driver is a motor contract carrier that has engaged in some interstate commerce. It is also undisputed that the manner in which American Driver assigns its work, first in/first out, is an indiscriminate system of apportioning work as contemplated in *Morris v. McComb* and *Brennan v. Schwerman Trucking*. Thus, the only question remaining is whether American Driver has established that all of its drivers were in a position to be called

upon to drive in interstate commerce and therefore subject to the jurisdiction of the Department of Transportation during the periods that the Department of Labor claims it failed to pay overtime as required under the FLSA.

The Federal Highway Administration, which acts under the authority of the Department of Transportation, has published its opinion as to what evidence is required to establish that a driver is in a position to be called upon to drive in interstate commerce as part of the driver's regular duties. 46 Fed.Reg. 37902, 37903 (1981). The Federal Highway Administration's interpretation of its own jurisdiction is entitled to deference. *Jones v. Giles*, 741 F.2d 245, 249 (9th Cir. 1984).

The FHWA's interpretation provides that "in order to establish jurisdiction under 49 U.S.C. 304, the carrier must be shown to have engaged in interstate commerce within a reasonable period of time prior to the time at which jurisdiction is in question." 46 Fed. Reg. at 37903.[2] Once the carrier establishes that it had engaged in interstate commerce, jurisdiction under the FHWA is extended "for a 4–month period from the date of the proof." *Id.* Thus, based on the Administration's interpretation, American Driver will be considered subject to the jurisdiction of the FHWA if it engaged in interstate commerce within a "*reasonable* period of time prior to the time at which jurisdiction is in question." *Id.* (emphasis added).

American Driver Service contends that what constitutes a "reasonable" time period can only be interpreted on a case by case basis. I agree. The term "reasonable" can only be understood on a case by case basis. *See* Black's Law Dictionary 1265 (6th ed. 1990) (Reasonable is defined as "fair, proper, just, moderate, suitable under the circumstances.").

American Driver operated on a seasonal basis. Thus, the fact that American Driver did not engage in interstate commerce for six to eight months prior to the season during which it did engage in interstate commerce does not mean it did not engage in interstate

---

1. 49 U.S.C. § 304 was repealed and revised as 49 U.S.C. § 3102(b).

2. The full text of the FHWA's interpretation is included in the majority opinion at page 1156.

commerce a reasonable time prior to the time at which jurisdiction is in question. The record shows that American Driver engaged in interstate commerce at the close of all of the seasons in question and then again some time after the start of each new season that followed. Viewing American Driver in terms of the periods of time that it was actually in operation, the gaps during which its drivers were not engaged in interstate commerce were relatively short. For a year-round carrier, such gaps would not result in the carrier's being subject to the FLSA. *See* 46 Fed.Reg. 37903 (jurisdiction under the FHWA is extended "for a 4-month period from the date of the proof [that the carrier engaged in interstate commerce]").

In light of the seasonal nature of American Driver's operations, there is evidence that American Driver actually engaged in interstate commerce a "reasonable time prior to the time at which [the Secretary of Transportation's] jurisdiction [came] into question." The opinion of the district court should be affirmed. The district court's holding that the issue of Roberts' liability is moot should also be affirmed in light of the fact that American Driver Service is exempt from the maximum hour requirements of the FLSA.